UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 6:19-cv-196-Orl-31-DCI

CLIFTON PICTON,
individually and on behalf of all
others similarly situated,

   Plaintiff,

v.

GREENWAY CHRYSLER-JEEP-DODGE,
INC d/b/a GREENWAY DODGE
CHRYSLER JEEP,

   Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## SECOND AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Clifton Picton brings this class action against Defendants Greenway Chrysler-Jeep- Dodge, Inc. d/b/a Greenway Dodge Chrysler Jeep ("Greenway"), BDC Promotions, Inc. ("BDC"), and Voicelogic d/b/a Voicelogic.com ("Voicelogic"), (collectively, "Defendants") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff amends his complaint with the written consent of Defendant.

## NATURE OF THE ACTION

1. Defendants knowingly and willfully violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), by making unsolicited prerecorded telemarketing calls[2] in violation of consumers' privacy rights.

2. Greenway – one of the largest automotive retailers in the country – knew that it was prohibited by the TCPA from contacting consumers on their cellular telephones with prerecorded calls, without their prior express written consent.

3. Nevertheless, in a failed attempt to circumvent the TCPA, Greenway did just that by directing BDC to utilize "ringless"[3] voicemail technology supplied by Voicelogic to place calls to Plaintiff and members of the Class (defined below) to promote its dealership.[4]

4. Through this action, Plaintiff seeks to hold Defendants accountable for their flagrant violations of the TCPA, and for willfully and knowingly violating the privacy of thousands of consumers.

---

[2] The term "call" is not defined by the TCPA.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).  "Webster's defines 'call' . . . as 'to communicate with or try to get into communication with a person by a telephone.'"  *Id.* at 953-54 (citing *Webster's Third New International Dictionary* 318 (2002)).

[3] The term "ringless" was self-servingly coined by companies that peddle this technology, and is simply false.  It is common knowledge that every cellular telephone audibly alerts a consumer when a voicemail is received.

[4] Like all federal statutory tort actions, the TCPA incorporates vicarious liability principles, including actual and apparent authority, and ratification.  The FCC has made this point explicitly, recently stating that a seller "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."  *See In re Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 FCC Recd. 6574, ¶ 24 (FCC May 9, 2013) (hereinafter "*2013 Dish Network Order*").

5. Plaintiff, for himself and a Class of similarly situated individuals, seeks statutory damages on behalf of himself and members of the Class, and any other legal or equitable remedies to redress Defendants' violations of the TCPA.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given Defendants' alleged violations of a federal statute.  This Court also has subject matter jurisdiction pursuant to the U.S. Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (d)(6), because there is diversity of citizenship and the claims of individual class members, in the aggregate, exceed the jurisdictional minimum of $5,000,000, exclusive of interest and costs.

7. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market their services within this District thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendants' tortious conduct against Plaintiff and other members of the Class occurred within the State of Florida, thereby subjecting Defendants to jurisdiction in the State of Florida.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a citizen of the State of Florida residing in Orange County, Florida.

9. Greenway is a Florida corporation with its principal place of business located at 9051 E Colonial Dr., Orlando, FL 32817.  Greenway directs, markets, and provides its business activities throughout the State of Florida.

10. BDC is a Florida corporation with its principal place of business located at 2729 SE 48th Avenue, Ocala, Florida 34480. BDC directs, markets, and provides its business activities throughout the State of Florida.

11. Voicelogic is a foreign corporation with its principal place of business located at 334 Munster Avenue, Suite 100, Toronto, Ontario M8Z 3C5. Voicelogic directs, markets, and provides its business activities throughout the State of Florida.

### THE TCPA

12. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

13. Accordingly, the TCPA exists to prevent communications like the ones made by Defendants that are at issue in this Complaint. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012).

14. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for

incoming calls whether they pay in advance or after the minutes are used. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014, 14115 (FCC July 3, 2003) ("*Rules & Regulations I*").

16. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In re of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 27 FCC Rcd. 1830, 1838 (FCC Feb. 15, 2012) (emphasis supplied).

17. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *Id. at* 1837-38, 1844, 1857-58.

18. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*,

788 F.3d at 820 (citing 47 C.F.R. §§ 64.1200(a)(2)(iii) and (f)(12); *Rules & Regulations I*, 18 FCC Rcd. at 14098.

21.  The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See id.* at 14097-99. This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call ***or in the future***. *Id.*

22.  In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See id.* at 14097.

23.  If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-2778, 30 FCC Rcd. 7961, 7991-92 (FCC June 18, 2015) ("*Rules & Regulations II*") (requiring express consent "for non-telemarketing and non-advertising calls").

24.  As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any ***additional*** harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis in original)).

## FACTS

### Greenway's Relationship with BDC and Voicelogic

25.  The subject prerecorded calls were sent by BDC through the use of a "ringless" calling platform provided by Voicelogic, at the direction and under the control of Greenway.

26. Prior to transmitting the subject prerecorded calls, BDC consulted with Greenway as to the content of the messages, and always received final approval to transmit the prerecorded messages from Greenway.

27. Although BDC was responsible for ultimately transmitting the subject prerecorded messages, Greenway always retained the right to change or add to the content of the messages.

28. At all times relevant, Greenway had the right to control BDC's telemarketing activities, which right it exercised.

29. At all times relevant, Greenway authorized BDC to use Greenway's name in the subject unsolicited prerecorded messages.

30. Greenway was, at all times relevant, aware of BDC's marketing activities and violations of the TCPA.

31. Voicelogic was, at all times relevant, aware of Greenway's and BDC's marketing activities and violations of the TCPA.

32. Voicelogic knowingly provided Greenway and BDC an avenue and means, through a calling platform, to transmit the subject prerecorded messages to Plaintiff and the class members. Further, Voicelogic has direct knowledge, and the right of control of, the complained conduct alleged herein, as the subject prerecorded messages were transmitted directly by Voicelogic.

33. Voicelogic also knowingly partakes in the violative conduct by allowing customers, like Greenway and BDC, to transmit an unlimited amount of "ringless" voicemails without ever taking steps to confirm that customers are complying with the TCPA.

34. BDC's and Voicelogic's acts complained of herein were known, consented to, and/or ratified by Greenway. Further, Greenway knowingly received and retained monetary benefit from BDC's unlawful calling and telemarketing practices alleged herein.

35. BDC's reliance on Voicelogic to transmit the subject prerecorded messages was known, consented to, and/or ratified by Greenway. Further, Greenway knowingly received and retained monetary benefit from BDC's use of the Voicelogic "ringless" voicemails platform.

### "Ringless" Voicemails are Regulated by the TCPA

36. "Ringless" voicemail technology was created, and is presently being used by unscrupulous companies, including Defendants, in an attempt to circumvent the TCPA.

37. Unfortunately for Defendants, "ringless" voicemails are regulated by the TCPA and it is liable under the TCPA for invading consumers' privacy rights by utilizing such technology when engaging in its telemarketing practices.

38. "Ringless" voicemail technology works by delivering prerecorded messages *en masse* to the voicemail boxes of cellular subscribers.

39. However, calls made by utilizing this technology are not actually "ringless" since the prerecorded message that results triggers an audible notification to the consumer once the message is received.

40. Further, the method by which "ringless" voicemails are transmitted to cellular telephones is essentially the same as the method for transmitting text messages to cellular phones. This is significant because consumers are entitled to the same consent-based protections for text messages as they are for voice calls to wireless numbers. *See Satterfield*, 569 F.3d at 952 (noting that the FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014) (holding that defendant bears the burden of showing that it obtained plaintiff's prior express consent before sending her a text message).

41. As illustrated below, "ringless" voicemails, including the prerecorded messages at issue in this case, are delivered just like text messages by "establishing a direct Internet-based

8

computer-to-computer data connection to the respective voicemails systems of the cellular carries. As part of the protocol for this data communication, subscribers' cellular telephone numbers are used to identify each voicemail box so that the pre-recorded voice messages are inserted into each voicemail box *en masse*."[5]





42. Unlike robocalls and text messages, however, consumers are left powerless to block "ringless" voicemails from being transmitted to their phones. Thus, a consumer's voicemail box

---

[5] Comments Opposing the Petition for Declaratory Ruling and Waiver by National Consumer Law Center, *In re Rules & Regulations Implementing the Tel. consumer Prot. Act of 1991*, CG Docket No. 02-278, DA 17-364 (FCC May 18, 2017) *available* at https://www.fcc.gov/ecfs/filing/105180243621422.

could be rendered useless by just a handful of companies using the technology to market their businesses.

43.     The purpose of a "ringless" voicemail is to communicate with or try to get into communication with a consumer through the consumer's cellular telephone.

44.     Indeed, it is precisely because consumers are unable to block "ringless" voicemails that prominent "ringless" voicemail companies such as Stratics, advertise that "ringless" voicemails have the highest consumer connection rate over any other technology:[6]



45.     The FCC has previously rejected the argument that technologies such as "ringless" voicemails are not regulated by the TCPA because they are not traditional "calls." Particularly, in the context of Internet-to-phone text messaging, which is essentially the same technology at issue in this case, the FCC has ruled:

> From the recipient's perspective, Internet-to-phone text messaging is functionally equivalent to phone-to-phone text messaging, which the Commission has already confirmed falls within the TCPA's protection. And the potential harm is identical to consumers; unwanted text messages pose the same cost and annoyance to consumers, regardless of whether they originate from a phone or the Internet. Finding otherwise—that merely adding a domain to the

---

[6] *See* Stratics Network, https://straticsnetworks.com/ringless-voicemail-drops/ (last visited Dec. 7, 2017).

telephone number means the number has not been "dialed"—when the effect on the recipient is identical, would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted text messages to wireless consumers.[7]

### Failed FCC "Ringless" Voicemail Petition

46. On January 9, 2017, a putative class action lawsuit under the TCPA was filed against TT of Pine Ridge, Inc., ("TT of Pine Ridge") a vehicle dealership located in Naples, Florida, styled *Mahoney v. TT of Pine Ridge, Inc.*, Case No. 9:17-cv-80029-DMM (S.D. Fla. 2017) ("*Mahoney*").

47. At issue in *Mahoney* was the use of Stratics' voicemail platform by TT of Pine Ridge to promote its dealership's inventory and related services. [*See id*. at ECF No. 1].

48. On March 31, 2017, All About the Message, LLC, a distributor for Stratics' ringless voicemail platform, filed a Petition for Declaratory Ruling with the FCC seeking a declaration that the TCPA does not apply to "ringless" voicemails (the "FCC RVM Petition"). The FCC RVM Petition appears to have been initiated and/or coordinated by TT of Pine Ridge as a Motion for Stay pending resolution of the FCC RVM Petition was filed on the same day by TT of Pine Ridge in the *Mahoney* lawsuit. [*See id*. at ECF No. 33].

49. The FCC RVM Petition received significant media attention,[8] and fierce opposition by members of Congress, State Attorney Generals, and consumer protection groups, including the National Consumer Law Center.

---

[7] *See Rules & Regulations II*, 30 FCC Rcd. at 8020.

[8] *See, e.g.*, Sarah Shemkus, *You can sound off to the FCC about 'ringless voice mail'*, BOSTON GLOBE (May 24, 2017), https://www.bostonglobe.com/business/2017/05/24/you-can-sound-off-fcc-about-ringless-voicemail/buOKWDgr06Fxb1m0qk2ZCK/story.html and Tara Siegel Bernard, *No, Your Phone Didn't Ring. So Why Voice Mail From a Telemarketer?* NY TIMES (June 3, 2017), https://www.nytimes.com/2017/06/03/business/phone-ringless-voicemail-fcc-telemarketer.html.

50. For example, several members of Congress wrote a letter to the Chairman of the FCC describing "ringless" voicemails as "a clear-cut attempt at an end-run around legal and technological protections against spam and unwanted phone communications."[9]

51. Similarly, the Attorney Generals for Massachusetts, New York, and Kentucky filed an opposition to the FCC RVM Petition stating in pertinent part:

> Ringless voicemails are prerecorded calls within the meaning of the TCPA. All About the Message seeks to avoid this conclusion by stating that ringless voicemail "bypasses the wireless telephone and telephone subscriber altogether," and by narrowly construing its conduct to include only the delivery of the voicemail message to a server and not to the consumer. This is a distinction without a difference.[10]

52. Ultimately, on June 20, 2017, the FCC RVM Petition was withdrawn after a class-wide settlement was reached in *Mahoney*, and the FCC did not issue a ruling with respect to the petition.

**Facts Specific to Plaintiff**

53. On or about February 21, 2018, Voicelogic, at the direction of BDC and on behalf of Greenway, called Plaintiff's cellular telephone number ending in 1843 ("1843 Number") and transmitted the following prerecorded telemarketing call to Plaintiff:

> Good Afternoon, this is Matt Bishop with Greenway Dodge Chrysler Jeep RAM. I'm sorry I missed you, I was calling to cordially invite you to attend our elimination event this Friday, Saturday, and Sunday. To dominate the market, Chrysler Motor Corporation has rolled out $150,000 in additional rebates and incentives this weekend only. Every vehicle will be discounted up to $11,000. Plus, you'll receive 0% financing for up to 72 months or

---

[9] *See* Correspondence from Members of Congress to the Honorable Ajit Pai, Chairman, FCC (June 21, 2017) *available at* https://www.fcc.gov/ecfs/filing/1072811351675.

[10] Comments Opposing the Petition for Declaratory Ruling and Waiver by Massachusetts, New York, and Kentucky, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278 (FCC June 2, 2017) *available at* https://www.fcc.gov/ecfs/filing/10602714924246.

> retail for your trade. Only the first hundred purchasers will be able to take advantage of this incredible opportunity. If you've been thinking about a new car or just not happy with your current vehicle. Don't miss this opportunity to save? My name is Matt Bishop with Greenway Dodge Chrysler Jeep RAM. Call me to make an appointment for the biggest sale of the year, at 407-704-2962 that number again is 407-704-2962. Thank you.

54. Upon information and belief, the number provided in the first pre-recorded message (407-704-2962) is owned and/or operated by or on behalf of Greenway.

55. Defendants called Plaintiff's 1843 Number with another pre-recorded message on or about February 28, 2018.

56. The second pre-recorded message states:

> Hi, this is Shaun Allen, General Sales Manager here at Greenway Dodge. I just wanted to make sure that uh you're taking advantage of our inventory elimination event that started on Friday. It was a huge success this past weekend and we've decided to extend it through Wednesday, February 28th. We still have all of the additional discounts and promotions if you're able to stop by. We need approximately 24 more deals to get our incentive and I am instructing my management team to accept any offers. With discounts over $11,000 in trade value to the highest peak. I'm sure we can make you happy. You can reach me at 407-605-5908. Please don't miss this opportunity and I look forward to hearing from you. Thank You.

57. Upon information and belief, the number provided in the second pre-recorded message (407-605-5908) is owned and/or operated by or on behalf of Greenway

58. Plaintiff is the subscriber and/or sole user of the 1843 Number.

59. Both pre-recorded messages were sent from the telephone number 407-211-6060, a number which upon information and belief, is owned and/or operated by or on behalf of Greenway.

60. Both pre-recorded messages are telemarketing and/or advertising as they promote Greenway's dealership and vehicle inventory.

13

61. Further, both pre-recorded messages attempt to entice Plaintiff into purchasing an automobile from Greenway.

62. Plaintiff received the subject calls within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district.

63. Upon information and belief, Defendants caused similar calls to be sent to individuals residing within this judicial district.

64. At no point in time did Plaintiff provide Defendants with his express written consent to be contacted using a pre-recorded message.

65. Defendants' unsolicited calls caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' calls also inconvenienced Plaintiff and caused disruption to his daily life.

## CLASS ALLEGATIONS

### Proposed Class

66. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

67. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a prerecorded message to their cellular telephone promoting Greenway's dealership and/or vehicle inventory using Voicelogic's "ringless" voicemail platform.**

68. Excluded from the Class are Defendants, their officers, directors, affiliates, legal representatives, employees, successors, subsidiaries and assigns, as well as the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the Class definition if discovery of further investigation reveals that the Class should be modified.

**Numerosity**

69. Defendants have transmitted prerecorded telemarketing calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

70. The exact number and identities of the Class members are unknown to Plaintiff at this time, but can be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' business, lead, and/or call records.

**Common Questions of Law and Fact**

71. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants made non-emergency prerecorded telemarketing calls to Plaintiff's and Class members' cellular telephones;

(b) Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;

(c) Whether Defendants' conduct was knowing and willful;

(d) Whether Defendants are liable for damages, and the amount of such damages; and

(e) Whether Defendants should be enjoined from such conduct in the future.

72. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants transmitted prerecorded telemarketing calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### Typicality

73. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### Adequacy

74. Plaintiff is a representative who will fairly and adequately represent and protect the interests of the Class because he shares common interests with Class members as a result of Defendants' misconduct.

75. In addition, Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including those involving violations of the TCPA. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of the other members of the Class.

### Proceeding Via Class Action is Superior and Advisable

76. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

77. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another

may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

78. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

79. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

80. Voicelogic – at the direction of BDC and on behalf of Greenway – transmitted calls using a prerecorded voice to the cellular telephone numbers of Plaintiff and members of the Class.

81. These calls were made without regard to whether Defendants had first obtained express written consent from the called party to make such calls. In fact, Defendants did not have prior express written consent to call the cellular telephones of Plaintiff and the other members of the Class when its calls were made.

82. Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the Class without their prior express consent.

83. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id.*

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

A. A declaration that Defendants' practices described herein violate the TCPA;

B. An injunction prohibiting Defendants from using an artificial or prerecorded voice to contact telephone numbers assigned to cellular telephones without the prior express permission of the called party;

C. An award of actual and statutory damages;

D. An award of treble damages of $1,500.00 for each and every violation, pursuant to 47 U.S.C. §§ 227(b)(3)(B)-(C); and

E. Such further and other relief the Court deems reasonable and just

## JURY DEMAND

Plaintiff and the Class members hereby demand a trial by jury.

Date: July 5, 2019

Respectfully submitted,

**HIRALDO P.A.**

By: */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
Florida Bar No. 030380
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**EISENBAND LAW, P.A.**
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg
Florida Bar No. 100537 19495
Biscayne Blvd. #607
Aventura, FL 33180
scott@edelsberglaw.com
Telephone: 305.975.3320

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
14 NE First Ave. 10th Floor
Miami, FL 33132
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709
*Counsel for Plaintiff*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
14 NE 1st Ave #1205
Miami, FL 33132
Email: ashamis@shamisgentile.com
Telephone: 305.479.2299
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 5, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
Florida Bar No. 030380
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713