**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No. 6:19-cv-196-Orl-31-DCI**

CLIFTON PICTON,
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

      Plaintiff,                                                **JURY TRIAL DEMANDED**

v.

GREENWAY CHRYSLER-JEEP-DODGE,
INC D/B/A GREENWAY DODGE CHRYSLER
JEEP,

      Defendant.
_____/

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 23 and Local Rule 4.04, Plaintiff Clifton

Picton moves to (1) certify a class with respect to the claims for violation of the Telephone

Consumer Protection Act, 47 U.S.C. §227 ("TCPA") set forth in Plaintiff's First Amended

Class Action Complaint, [ECF No. 27]; (2) to designate Plaintiff as class representative; and

(3) to designate the law firms of Shamis & Gentile, P.A., IJH Law, Hiraldo P.A., Edelsberg

Law, P.A., and Eisenband Law P.A. as class counsel.

## I.    INTRODUCTION

This case concerns Defendant's willful disregard for the Telephone Consumer

Protection Act ("TCPA"), and the use of automated technology to bombard individuals with

unwanted, prerecorded marketing calls.  On February 21st, 26th, and 28th of 2018, Defendant

Greenway Chrysler-Jeep-Dodge, Inc. ("Greenway" or "Defendant"), through its marketing vendor, BDC Promotions, Inc., ("BDC"), successfully transmitted 7,122 unsolicited "ringless" voicemails ("RVMs") to 2,935 consumers' cellular telephone numbers in violation of the TCPA.

The "ringless" voicemail platform used to transmit the RVMs was provided by Voicelogic, who not only flaunts the ability of its technology to invade the privacy of consumers, but also consumers' inability to stop the invasion of privacy caused thereby. Indeed, the technology at issue works by delivering targeted, prerecorded telemarketing voice messages *en masse* directly to the voicemail boxes of cellular subscribers.[1]

To establish Defendant's liability under the TCPA for the violative calls, Plaintiff must show that Defendant sent, or caused to be sent, prerecorded telemarketing RVMs to the cellular phone numbers of Plaintiff and members of the putative Class without first having obtained express written consent.  Claims under the TCPA, such as the one here, make ideal class actions because the members of the putative class suffer the same injury in virtually the same manner.[2] Class certification is warranted here because the relevant facts and legal issues supporting

---

[1] This Court has already determined that RVMs are subject to the TCPA's restrictions.  See [D.E. No. 26] (stating, "[T]he Court rejects the argument that voicemails, or ringless voicemails, are not subject to the TCPA.")

[2] In the class certification context, the Fourth Circuit Court of Appeals recently stated that, "The TCPA was enacted to solve a problem. Simply put, people felt almost helpless in the face of repeated and unwanted telemarketing calls.….Congress responded with an Act that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages. The features of the private right of action in § 227(c)(5), whether statutory damages or strict liability, evince an intent by Congress to allow consumers to bring their claims at modest personal expense. These same features also make TCPA claims amenable to class action resolution. Dish's arguments, if accepted, would contort a simple and administrable statute into one that is both burdensome and toothless. It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Krakauer v. Dish Network, LLC*, 2019 U.S. App. LEXIS 16111, at *40 (4th Cir. May 30, 2019).

Plaintiff's claims are identical to those supporting all or substantially all other recipients of Defendant's unauthorized RVMs – *i.e.*, their cell phone numbers were obtained in the same way and they were all sent marketing RVMs in the exact same manner. Therefore, Plaintiff moves this Court to certify the following Class under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

> **All persons within the United States who (1) were successfully transmitted a prerecorded message; (2) promoting Defendant's goods and/or services; (3) on their mobile telephone; (4) on February 21st, 26th, and/or 28th 2018; (5) that was sent using the "ringless" voicemail platform hosted by Infolink Communications, Ltd., d/b/a Voicelogic; (6) after having provided their telephone number to Defendant for purposes of obtaining vehicle service from Defendant; (7) and have not purchased a vehicle from Defendant.**

As demonstrated below, the prerequisites of Rule 23(a) are met, and the requirements of Rule 23(b)(3) are satisfied. Further, Plaintiff's counsel will pay the cost of notice required by Rule 23(c)(2), to be recovered as an expense of litigation from Defendant if Plaintiff is successful in recovering for the class.

## II.    STATEMENT OF COMMON FACTS

Defendant is an automotive retailer that sells and services new and pre-owned vehicles. Deposition Transcript of Defendant's Corporate Representative Charles Agner ("Agner Depo."), attached as **Exhibit A**, at 10:5-21. To advertise its business, Defendant engages in various forms of consumer marketing, including email marketing and direct mailing. *Id.* at 14:7-24. In a marketing campaign that took place on February 21st, 26th, and 28th 2018, Defendant directed the transmission of 7,122 unsolicited marketing RVMs to Plaintiff and Class members. *See* Declaration of Ignacio Hiraldo Regarding Class Data at ¶¶ 8-10, attached as **Exhibit B** ("Hiraldo Dec."); Deposition Transcript of BDC's Corporate Representative

Justin Specht, dated June 13, 2019 ("Specht Depo."), attached as **Exhibit C**, at 25:22-26:40;

62:15-19; Deposition Transcript of Voicelogic's Corporate Representative Cesar Correia

("Correia Depo.), attached as **Exhibit D**, at 24:16-23; 25:8-12; 27:16-23; 28:2-8; 38:24-39:3;

41:15-20; .

### A.    Defendant's Marketing Vendor

The RVMs at issue were sent by Defendant's marketing vendor, BDC, through the use

of a "ringless" calling platform provided by Voicelogic. Specht Depo. at 13:3-14.   Justin

Specht, the owner of BDC, worked directly with Defendant's General Sales Manager Shaun

Allen to organize and execute the campaign.   *Id*. at 27:9-16; 33:7-34:3. Defendant worked

closely with BDC in launching the RVM marketing campaign, including, but not limited to,

approving the scripts for the prerecorded messages. *See* Deposition Transcript of Defendant's

General Sales manager Shaun Allen ("Allen Depo."), attached as **Exhibit E,** at 19:23-21:5.

Accordingly, with respect to the RVMs at issue in this case, BDC would have followed any

instructions provided by Defendant regarding the content of the calls and would not have

launched the campaign without Defendant's express permission. *Id.* at 20:18-21:5.

### B.    Defendant's RVM Marketing Campaign

Defendant obtained Plaintiff's and Class members' cellular telephone numbers by

collecting them from consumers seeking vehicle service work. Agner Depo. at 35:20-36:2;

Deposition Transcript of Jean Demers ("Demers Depo."), attached as **Exhibit F**, at 11:2-5;

20:23-25 and 28:19-25; Hiraldo Dec. at ¶ 5.   Unbeknownst to Plaintiff and members of the

putative class, Defendant was not only collecting cellular numbers related to the service work

but was cataloging the cellular telephones to later use in unsolicited mass telemarketing

campaigns. Notably, the marketing at issue here had no relationship to service work, and all

contained advertisements related to the purchase or lease of new and used vehicles. Allen Depo. at 26:4-11 (Q. Do you consider [the subject RVMs] to be marketing? … A. Yeah.); Specht Depo. at 27:1-28:5.

### 1.    Defendant's Marketing Calls to Plaintiff and Class Members

On September 21st, 26th, and 28th BDC launched three separate RVM campaigns on behalf of Defendant and at its direction, which resulted in the successful transmission of 7,122 RVMs to 2,935 unique cellular telephones. Hiraldo Decl. at ¶¶ 9-10.  BDC recorded the RVM that was ultimately sent to Plaintiff and members of the class after consulting with Defendant. Allen Depo. at 30:15-31:10. With respect to Plaintiff, BDC, on behalf of Defendant and using the Voicelogic platform, transmitted three RVMs to Plaintiff's cellular telephone number on September 21st, 26th and 28th.  Hiraldo Decl. at ¶ 11.  Two of the prerecorded messages stated as follows:

> "Good afternoon, this is Matt Bishop with Greenway Dodge Chrysler Jeep RAM. I'm sorry I missed you, I was calling to cordially invite you to attend our elimination event this Friday, Saturday and Sunday. To dominate the market Chrysler Motor Corporation has rolled out $150,000 in additional rebates and incentives this weekend only. Every vehicle will be discounted up to $11,000. Plus, you'll receive 0% financing for up to 72 months or retail for your trade. Only the first hundred purchasers will be able to take advantage of this incredible opportunity. If you've been thinking about a new car or just not happy with your current vehicle. Don't miss this opportunity to save? My name is Matt Bishop with Greenway Dodge Chrysler Jeep and RAM. Call me to make an appointment for the biggest sale of the year, at 407-704-2962 that number again is 407-704-2962. Thank you."

> "Hi, this is Shaun Allen, General Sales Manager here at Greenway Dodge. I just wanted to make sure that uh you're taking advantage of our inventory elimination event that started on Friday. It was a huge success this past weekend and we've decided to extend it through Wednesday, February 28th. We still have all of the additional discounts and promotions if you're able to stop by. We need approximately 24 more deals to get our incentive and I am instructing my management team to accept any offers. With discounts over $11,000 in trade value to the highest peak. I'm sure we can make you happy. You can reach me at 407-605-5908. Please don't miss this opportunity and I

look forward to hearing from you. Thank You."

Agner Depo. at 20:8-21:7; 23; 19-24:12. The RVMs were sent to Plaintiff for purposes of marketing Defendant's goods and services. Agner Depo. at 25:6-17. The third RVM contained the same or similar content and was also designed to "encourage a customer to come in and purchase a vehicle." *Id; see also* Allen Depo. at 31:15-34:14 (Mr. Allen confirming that BDC was hired for marketing purposes and all of the RVMs transmitted by BDC were designed to advertise Defendant's goods and services).

## 2.    Records Provided to Plaintiff Regarding the Campaigns

In response to a request for production served by Plaintiff, Voicelogic produced detailed spreadsheets that contain data for the RVMs that were transmitted to Plaintiff and the putative Class (the "Campaign Reports").  Hiraldo Decl. at ¶¶ 3-7. The Campaign Reports contain identifying information such as (1) the targets' Telephone Numbers, (2) the Date and Time an RVMs were transmitted; (3) the targets' full name; (4) the targets' addresses, including zip codes; (4) for some individuals, the targets' email address,  (5) a column labeled "Response" which contains a designation for whether the RVM was successfully transmitted, and (6) the individuals' vehicles' make, model, year, and vin number.  *Id.* at ¶ 4.

Defendant, through BDC and using the Voicelogic Platform, attempted to transmit a total of 61,519 RVMs to Plaintiff and Class members during a three-day period in 2018. Hiraldo Decl. at ¶ 8.  Of the 61,519 attempts, 7,122 were delivered successfully to cellular telephones of service only customers.  *Id.* at ¶ 9.  The 7,122 successful deliveries were made to 2,935 unique telephone numbers.  *Id*. at ¶ 10. The Campaign Reports contain identifying information for every individual who received an RVM, including full name, telephone

number, mailing address, vehicle information (including VIN number), and also confirm that an RVM was successfully transmitted. *Id.* at ¶ 4. Additionally, every telephone number in Plaintiff's proposed class to which an RVM was successfully sent by BDC on behalf of Defendant was a cellular telephone number. *Id.* at ¶¶ 6, 9; Specht Depo. at 92:2-7; 96:7-97:1 (Mr. Specht acknowledging that the Disposition Reports attached as Exhibit A of the Hiraldo Dec., are the only way to determine if RVMs were successfully transmitted to cellular telephones); Correia Depo. at 32:21-33:15 (discussing how a result of "VOICEMAIL" in the "Response" column indicates successful delivery of an RVM).

### III.   ARGUMENT

"Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition." *Krakauer*, 2019 U.S. App. LEXIS 16111, at *21; *C-Mart, Inc. v. Metro. Life Ins. Co*., 299 F.R.D. 679, 691 (S.D. Fla. 2014). Plaintiff's claims asserted here are no exception to this general rule.

The evidence here uniformly reflects that RVMs were transmitted on Defendant's behalf to Plaintiff and the putative Class members in an identical manner using identical technology, and without Defendant, or anyone else, securing the required express written consent from Plaintiff or any of the putative Class members. Accordingly, like all putative Class members, Defendant's RVMs harmed Plaintiff. *See Schaevitz*, 2019 U.S. Dist. LEXIS 48906, at *19 (noting that an unsolicited ringless voicemail is "precisely the kinds of harm the TCPA aims to prevent."). A class action is the only realistic way that the nearly three thousand consumers around the country will get their day in court to challenge Defendant's practice of sending unsolicited RVMs directly to individual's voicemail.

A. **Plaintiff has Standing to Maintain This Action.**

"It is well-settled in the Eleventh Circuit that prior to the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim." *Powell v. Youfit Health Clubs Ltd. Liab. Co.*, No. 17-cv-62328, 2019 U.S. Dist. LEXIS 28842, at *6 (S.D. Fla. Jan. 14, 2019). "In order to establish Article III standing to bring a suit, a plaintiff has the burden to show that he '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 41023, at *2-3 (S.D. Fla. Mar. 22, 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "A plaintiff attains an injury in fact when he suffer[s] an invasion of a legally protected interest that is concrete and particularized[,] and actual or imminent, not conjectural or hypothetical." *Id.* at *3.

The Eleventh Circuit has recently stated that "a plaintiff is not required to demonstrate the merits of his case in order to establish his standing to sue." *Muransky v. Godiva Chocolatier, Inc.*, Nos. 16-16486, 16-16783, 2019 U.S. App. LEXIS 11630, at *12 (11th Cir. Apr. 22, 2019). Next, the Eleventh Circuit noted that even after "*Spokeo* as before, 'intangible' injuries…may satisfy Article III's concreteness requirement," and that "*Spokeo* made no change to the rule that 'a small injury, 'an identifiable trifle,' is sufficient to confer standing.'" *Muransky*, 2019 U.S. App. LEXIS 11630, at *15.

Here, Plaintiff has standing under the TCPA to bring his claim. The TCPA is a "consumer protection statute[] that confer[s] on [P]laintiff[] the right to be free from certain

harassing and privacy-invading conduct." *Manno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013); *see also Gamble v. New Eng. Auto Fin.*, 735 F. App'x 664, 666 (11th Cir. 2018) ("Congress provided [Plaintiff] that right through the TCPA, and she had that right (and could assert it through litigation against [Defendant]…)") (citing 47 U.S.C. § 227). More specifically, prerecorded messages like the ones at issue in this case are prohibited by the plain language of the statute,[3] and Congress has specifically found that the public "consider automated or prerecorded telephone calls . . . to be a nuisance and an invasion of privacy." *Id.* (quoting Telephone Consumer Protection Act of 1991, S. 1462, 102d Cong., Pub. L. No. 102-243, § 2, ¶ 10 (1991)).

Further, the injury alleged by Plaintiff here is particularized. Indeed, Plaintiff received a prohibited call (via a RVM) from Defendant on his cell phone without his consent, and, thus, she was affected in a "personal and individual way." *Mohamed*, 2017 U.S. Dist. LEXIS 41023, at *3; *Schaevitz*, 2019 U.S. Dist. LEXIS 48906, at *20 (S.D. Fla. Mar. 25, 2019) (holding that the receipt of an RVM confers Article III standing); *Picton*, 2019 U.S. Dist. LEXIS 103796, at *5 n.2 (M.D. Fla. June 21, 2019) (same). This injury, even if construed as intangible, is also concrete. *Id.* "[W]here a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights.'" *Eisenband*

---

[3] "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or **prerecorded voice** . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

*v. Schumacher Auto., Inc.*, No. 18-cv-80911, 2018 U.S. Dist. LEXIS 181272, at *3 (S.D. Fla. Oct. 22, 2018) (Bloom, J.). "The Eleventh Circuit, pre- and post-*Spokeo*, has held that the TCPA 'creates such a cognizable right.'" *Id.*

### B.    The Class is Adequately Defined and Ascertainable

"Before considering Rule 23's explicit requirements, the Court must determine whether the proposed class has been adequately defined and is ascertainable." *Reyes*, 2018 WL 3145807, at *9.  "An identifiable class exists if its members can be ascertained by reference to objective criteria[,]" as opposed to a class member's state of mind. *Stewart v. Fla. Cmty. Law Grp.*, No. 6:18-cv-2111-Orl-CEM-DCI, 2019 U.S. Dist. LEXIS 153147, at *7 (M.D. Fla. Aug. 26, 2019).

Further, "in an unpublished opinion in *Karhu v. Vital Pharmaceuticals*, a three-judge panel in this circuit took the view that ascertainability also requires that the plaintiff propose an administratively feasible method, supported by useful evidentiary support, by which class members can be identified." *Keim v. ADF MidAtlantic, Ltd. Liab. Co.*, 328 F.R.D. 668, 676 (S.D. Fla. 2018) (citing *Karhu v. Vital Pharms., Inc*., 621 Fed. Appx. 945, 947-48 (11th Cir. 2015)).  The Eleventh Circuit has not formally adopted this position, *see Keim*, 328 F.R.D. at 676 n.3 (stating, "Because the parties do not dispute that Plaintiff must propose an evidentiary-based administratively feasible method of identification, the Court need not consider whether the Eleventh Circuit would formally adopt this view in a published opinion."), and many circuits have declined to interpret R. 23 to impose additional standards for certification not mandated by R. 23. *Briseno v. ConAgra Foods, Inc.,* 2017 U.S. App. LEXIS 20, at *9 (9th Cir. Jan. 3, 2017) (refusing to interpose a showing of administrative feasibility to identify the class);

*see* also *Sandusky Wellness Ctr., LLC,* 821 F.3d at 995-96; *Rikos v. Procter & Gamble Co.,* 799 F.3d 497, 525 (6th Cir. 2015); *Mullins*, 795 F.3d at 658.  Regardless, as discussed below, the proposed class here meets *Karhu's* requirements.

Additionally, Rule 23 expressly contemplates that not every single class member must be identified. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1320-21 (11th Cir. 2012) ("Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate.").  Plaintiff is not required to provide a foolproof method to "identify all who fall within the class definition." *Mullins,* 795 F.3d at 657; *see also Krakauer*, 2019 U.S. App. LEXIS 16111, at *27-28 ("The goal is not to 'identify every class member at the time of certification[.]'"); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *30 (S.D. Fla. June 26, 2018) ("[t]he Court *only considers whether class members can be identified at all*, at least in any administratively feasible (or manageable) way.") (emphasis in the original).[4]

Here, each element of the proposed class definition is an objective, rather than subjective, criteria that is easily determined by reference to Defendant and the business records discussed above: **All persons within the United States who (1) were successfully transmitted a prerecorded message; (2) promoting Defendant's goods and/or services; (3) on their mobile telephone; (4) on February 21st, 26th, and/or 28th 2018; (5) that was sent using the "ringless" voicemail platform hosted by Infolink Communications, Ltd.,**

---

[4] Indeed, the Federal Judicial Center's Class Action Pocket Guide explains that a 70% reach for class notice is within the norm.  Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges at pg. 27 (3d ed. 2010).

**d/b/a Voicelogic; (6) after having provided their telephone number to Defendant for purposes of obtaining vehicle service from Defendant; (7) and have not purchased a vehicle from Defendant.**

Because of the detailed logs produced by Voicelogic, identifying the class members is a non-issue. As discussed above, Plaintiff is in possession of Campaign Reports that identify every single individual that was sent an RVM.  For each of these individuals, Plaintiff has detailed data, including the telephone number, addresses (including zip code), full name, the date and time a violative RVM was transmitted, confirmation that the RVM was successfully transmitted, the individual's vehicle information (including VIN Number), and, for some individuals, email addresses. *See, e.g.,* Hiraldo Decl. at ¶4.  Further, the Campaign Reports identify to which individuals the RVM was successfully delivered to a cellular telephone. *Id.*; *see also id.* at ¶¶ 7. As such, there can be no plausible argument that the class is not ascertainable.   Thus, even under *Karhu*, Plaintiff has identified an administratively feasible method of identifying class members using the documents produced in this matter:

> Moreover, Plaintiff has explained that the identities of the individuals associated with the listed phone numbers is identifiable via an additional spreadsheet that Defendants produced to Plaintiff. Doc. 74 at p. 5; Doc. 74-1 at ¶¶ 6-7. That spreadsheet, Plaintiff represents, contains additional contact information, including associated names and mailing addresses, for 99.4 percent of the listed telephone numbers. Doc. 74 at p. 5; Doc. 74-1 at ¶¶ 6-7. Indeed, other courts have accepted less straightforward methods of identifying class members.

*See Northrup v. Innovative Health Ins. Partners, LLC*, 329 F.R.D. 443, 451 (M.D. Fla. 2019) (Honeywell, J.); *see also Eldridge v. Pet Supermarket, Inc*., No. 18-22531, 2019 U.S. Dist. LEXIS 142999, at *21 (S.D. Fla. Aug. 21, 2019) ("Defendant's arguments [that the class is not ascertainable] lack merit because Defendant and its agents … have produced all the telephone

numbers to which Defendant sent automated text messages."). In fact, other courts in this Circuit have found that ascertainability is met when TCPA plaintiffs only have access to telephone numbers. *See Keim*, 328 F.R.D. at 677 (finding ascertainability was satisfied where plaintiff only had access to telephone numbers of the proposed class). Here, as the Fourth Circuit Court of Appeals recently observed in a TCPA matter, "The court was presented with data… connecting the number to particular names and addresses…The class members could therefore be identified on a large-scale basis, and notified of the class action accordingly." *Krakauer*, 2019 U.S. App. LEXIS 16111, at *27.

Further, to the extent the files need to be further verified by the class administrator during the process of providing notice to the Class members—which is unlikely given the amount of personal identifying information they contain—Plaintiff can use the reverse-append method to further validate the data.[5] Courts throughout the Eleventh Circuit have approved of the reverse-append telephone number method in connection with identifying class members in TCPA class actions. *See Reyes*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *33 (approving of "'reverse-append processes' or 'skip-tracing services' or 'information from public and proprietary records' to match telephone numbers to particular names and addresses and cellular services."); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 U.S. Dist. LEXIS 137022, at *6 (M.D. Fla. Nov. 22, 2016) (holding that phone number

---

[5] The reverse append method involves "partner[ing] with reputable data vendors, such as LexisNexis, Experian, Microbilt, TransUnion, and others, to utilize reverse-append processes or skip-tracing services or information from public and proprietary records to match telephone numbers to particular names and addresses and cellular services." *Reyes*, 2018 U.S. Dist. LEXIS 106449, at *33 (citations and quotation marks omitted).

lookup was sufficient to satisfy Rule 23's "best notice" requirement).[6]  Additionally, and likely very unnecessary, Plaintiff can issue subpoenas to the major phone carriers for any missing or conflicting class member information or retain a call center to contact the 2,935 putative class members to confirm identities and mailing addresses. *See Keim*, 328 F.R.D. at 668 ("the Court finds that Plaintiff's plan to subpoena the phone carriers for their historical records as to the names and addresses of the subscribers of the cellular telephone numbers that were texted is administratively feasible.").

## 1.    Rule 23(a)(1) – Numerosity Is Satisfied

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impractica[l]." Fed. R. Civ. P. 23(a)(1). There is no "definite standard" for satisfying this requirement in terms of how large the class must be, and it is not necessary to know the actual class size. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001).  The proposed Class here easily meets the numerosity requirement as 7,122 RVMs were successfully transmitted to 2,935 unique telephone numbers. Hiraldo Decl. at ¶¶ 8; 9.

## 2.    Rule 23(a)(2) – Common Questions of Law and Fact Exist

The test for commonality is whether the class claims present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is another "low hurdle." *Williams*, 568 F.3d at 1356. To satisfy it, Plaintiff need only to show that the class claims present "at least one issue whose resolution will affect all or a significant number of the putative class

---

[6] *See also Soto v. The Gallup Organization, Inc.* No. 13-cv-61747-MGC (S.D. Fla. Nov. 24, 2015); *Guarisma v. ADCAHB Medical Coverages, Inc.*, No. 13-cv-21016 (S.D. Fla. June 24, 2015); *De Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670 (S.D. Fla. Sep. 11, 2015); *Mey v. Venture Data, LLC*, No. 14-123, Doc. 247 at 26 (N.D. W. Va. June 6, 2017); *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 442 (E.D. Mich. 2015).

members," or that their claims "are susceptible to class-wide proof." *Id.* at 1355

In this case, Plaintiff's claims against Defendant for violation of the TCPA raise multiple common legal and factual issues, any one of which is sufficient to find commonality, including: (1) whether a call was made on behalf of Defendant (via the transmission of RVMs); (2) whether that call was for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A); (3) whether the RVMs sent by or on behalf of Defendant constitute "telemarketing" as defined by 47 C.F.R. §64.1200(f)(12); (4) whether Defendant obtained the proper express written consent to send the subject RVMs; and (5) whether Defendant acted knowingly and willfully.

Plaintiff's and the Class members' claims do not turn on individualized issues. Instead, Plaintiff will use common facts to answer all of the above common questions. *See, e.g.*, *Mohamed*, 320 F.R.D. at 313 (commonality satisfied in TCPA class action where "[t]he entire case revolves around an alleged common course of conduct performed by" defendant and its vendor); *C-Mart, Inc.*, 299 F.R.D. at 690 (holding in TCPA class action that "the legal questions that the instant matter presents will be common to all class members"); *Manno*, 289 F.R.D. at 687 (finding consent defense to be common where all class members were subject to the same TCPA related disclosures). Moreover, that Plaintiff and each member of proposed Class suffered the same injury and would be entitled to the same statutorily-mandated relief in the event Plaintiff prevails on his claims, gives rise to an additional common question. The commonality requirement is satisfied.

### 3.     Rule 23(a)(3) – Plaintiff's Claims Are Typical of the Class

Rule 23's typicality element requires that the claims of Plaintiff and the putative class members "arise from the same event or pattern or practice and are based on the same legal

theory." Fed. R. Civ. P. 23(a)(3); *Williams*, 568 F.3d at 1356-57. "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). However, the "[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

The required nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* at 1216; *see Mohamed*, 320 F.R.D. at 314 (finding typicality because the plaintiff's claims under the TCPA involve "alleged violations of the same federal statute and arise from the same pattern or practice of conduct allegedly engaged in by Defendant"). Further, "demonstrating typicality does not require showing that there are no factual variations between the claims of the named Plaintiff and those of the proposed class." *Groover v. Prisoner Transp. Servs., LLC,* No. 15-cv-61902-BLOOM/Valle, 2018 U.S. Dist. LEXIS 215959, at *31-32 (S.D. Fla. Dec. 21, 2018).

Here, Plaintiff and the Class members were subjected to similar marketing RVMs and their claims rely on the same legal theory: that Defendant, via BDC, sent them telemarketing RVMs in violation of the TCPA. BDC sent the RVMs at the express direction of Defendant through the Voicelogic platform. This exact set of facts is applicable to everyone in the Class. Plaintiff and the putative Class members will need to prove the same elements to demonstrate Defendant's TCPA liability from the transmission of the RVMs at issue. Thus, the typicality

requirement is satisfied.

> **4.      Rule 23(a)(4) – Plaintiff and her Counsel Will Adequately Represent the Class**

The adequacy element of Rule 23(a)(4) requires that Plaintiff and his counsel be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means Plaintiff must have "no interests antagonistic to the class," and his counsel must be qualified to represent the class. *Fabricant*, 202 F.R.D. at 314-15.   Plaintiff meets this test because her interests are squarely aligned with those of the Class. Like members of the Class, Plaintiff claims that Defendant violated her rights under the TCPA by placing unsolicited telemarketing calls. Furthermore, Plaintiff has no interests antagonistic to those of the Class.

The firms and counsel representing Plaintiff—IJH Law, Shamis & Gentile, P.A., Edelsberg Law, P.A., Hiraldo P.A., and Eisenband Law, P.A.—are also adequate. All firms have extensive experience in the area of consumer rights and class action litigation. They have litigated multiple cases nationally, and have the resources necessary to conduct litigation of this nature.   Plaintiff's attorneys have been appointed as lead class counsel in several cases. *See* Resumes of the law firms representing Plaintiff attached as **Exhibit G**. Plaintiff's counsel have diligently investigated and dedicated substantial time and financial resources to the investigation and prosecution of the claims at issue and will continue to do so. *See, e.g.*, *Fabricant*, 202 F.R.D. at 315.   Accordingly, Plaintiff and his counsel meet the adequacy requirement and should be appointed the Class Representative and Class Counsel, respectively.

> **C.      Certification Under Rule 23(b)(3) is Appropriate**

> **1.      Common Questions Predominate**

In addition to satisfying the Rule 23(a) requirements, Rule 23(b)(3) is satisfied.

Common questions of law or fact predominate "if they 'ha[ve] a direct impact on every class member's effort to establish liability on every class member's entitlement to … relief." *Williams,* 568 F.3d at 1356 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).[7] An inquiry into the predominance of common questions of law or fact "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Prindle v. Carrington Mortgage Servs., LLC,* 3:13-CV-1349-J-34PDB, 2016 LEXIS 112881, at *7 (M.D. Fla. Aug. 24, 2016). Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof. *Id.* (*citing Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 579 (M.D. Fla. 2006)).

Indeed, the common questions identified *supra*, are all subject to class-wide proof. Whether Defendant was engaged in telemarketing and whether Defendant obtained Class members' prior express written consent are dispositive of each Class members' claims. *See Mohamed,* 320 F.R.D. at 316 ("The resolution of each issue will directly impact the resolution of the claims of the modified class and whether each can establish liability against [the defendant] under the TCPA.")

Despite this, Plaintiff anticipates that Defendant will attempt to argue that individualized issues of consent predominate.  While the TCPA provides for an affirmative defense for telemarketing calls made with "prior express written consent" of the called party, class-wide evidence demonstrates that, even if it were asserted, Defendant could not establish

---

[7] Rule 23(b)(3) does not require all issues presented in the case to be common among the class. It requires only that the common issues predominate over any individual issues. *Klay*, 382 F.3d at 1254 ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  Here, it happens to be that all issues are common to the Classes.

such a defense here because, as described in detail below, Defendant failed to secure actual "express written consent" from any member of the proposed class.

"At one time, FCC implementing regulations required only 'prior express consent' for automated calls to cell phones, meaning that a person had only to 'knowingly release their phone number [to the caller] . . . absent instructions to the contrary.'" *Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232, at *5 (N.D. Ill. June 1, 2017). In 2012, the FCC "'revise[d its] rules to require prior **express written consent** for all autodialed or prerecorded telemarketing calls to wireless numbers.'" See *Snyder v. Icard Gift Card, Ltd. Liab. Co.*, No. 0:15-CV-61718-WPD, 2016 U.S. Dist. LEXIS 191212, at *10-11 (S.D. Fla. May 16, 2016) (citing In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991, 27 FCC Rcd. 1830, 1831 ¶ 2; 1841 ¶ 28 (Feb. 15, 2012) ("2012 Order")) (emphasis added). The TCPA defines "prior express written consent," as,

> [A]an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
> (A)   By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8). Further, "'prior express written consent' can be obtained only after

providing the recipient with the required disclosures that they agree to receive automated telephone advertisements and that agreeing to receive such calls is not required to make a purchase." *Snyder*, 2016 U.S. Dist. LEXIS 191212, at *13.  "Simply obtaining some form of written express consent is insufficient to obtain the consent required by law to send automated text message advertisements." *Id.*

Because Defendant never secured proper express written consent from any proposed class member authorizing the transmission of prerecorded telemarketing calls, the consent issue can be resolved on a class wide basis, and does not require resorting to individualized inquiries.  *See, e.g.*, *Brown v. DirecTV, LLC*, No. CV 13-1170 DMG (Ex), 2019 U.S. Dist. LEXIS 54831, at *18-22 (C.D. Cal. Mar. 29, 2019) (granting class certification in a TCPA matter, and holding that individualized issues of consent did not exist even where defendant claimed that putative class members signed different versions of its agreement purportedly giving express written consent).

A brief review of the consent Defendant is likely to rely on demonstrates why the consent issue can be dealt with on a class wide basis.  According to Defendant's response to Plaintiff's Interrogatory No. 12, Defendant had "express written consent" because:

> Plaintiff provided his phone number to Defendant without any restriction or objection to receiving marketing communications. Moreover, Plaintiff's business interactions with Defendant were and are subject to Defendant's privacy policy, which is publicly available at the following URL: https://www.greenwaychryslerjeepdodge.com/privacy-policy, and contains an express consent to receive marketing communications, expressly including automated calls.

Defendant's Amended Answers to Plaintiff's First Set of Interrogatories, attached as **Exhibit H,** at pg. 4.

First, simply providing one's telephone number "without any restriction or objection to receiving marketing communications" does not meet any of the requirements of the TCPA's definition of "prior express written consent".  47 C.F.R. § 64.1200(f)(8); see also *Snyder*, 2016 U.S. Dist. LEXIS 191212, at *13.  Second, Defendant's reliance on its privacy policy, available on its website, is disingenuous.  According to Defendant, this policy was "clarified" in June 2018, long after the RVMs were sent in February 2018.  *See* Agner Depo. at 40:2-6; 50:17-23. Defendant cannot rely on the language of a privacy policy which was not in existence at the time it obtained the numbers to which it placed RVMs in order to argue consent after the fact.

Regardless, the privacy policy Defendant now points to, available on its website, does not meet 47 C.F.R. § 64.1200(f)(8)'s requirements that the agreement is signed, is not "clear and conspicuous," does not mention telemarketing using a prerecorded voice, and is not optional.  *See*, privacy policy, available at https://www.greenwaychryslerjeepdodge.com/privacy-policy, attached as **Exhibit I**.

Finally, Plaintiff has limited his class to individuals that provided their cellular telephone numbers to Defendant when they brought their cars in for service.  Defendant produced the paperwork associated with these service individuals. *See*, *e.g.*, Redacted Plaintiff's Service Documents, attached as **Exhibit J**.  As explained by Defendant itself, these documents do not meet the requirements for express written consent under 47 C.F.R. § 64.1200(f)(8):

> Q. All right. Looking back at the documents that we just covered --
> A. Yes.
> Q. -- which are Bates 2 through 11 [Exhibit J], with the exception of the documents that are not Greenway documents, can you point me to anything in there where Mr. Picton agreed to the receipt of marketing or promotional calls on his cellular telephone number?

> MR. MAGRUDER: Object to the form to the extent it calls for a legal conclusion. But you can answer.
>
> A. There's nothing in those documents that stipulates that.
>
> Q. **Has Greenway ever used any type of document associated with service and repair work that makes specific reference to marketing or promotional calls to cellular telephones?**
>
> A. **Not that I'm aware of, no.**

Agner Depo. at 87:2:14 (emphasis added); 112:2-11; 113:15-19.  In sum, Defendant cannot simply state it might have consent—without actually having proper consent—in the hopes that this will defeat class certification.  See *Mohamed*, 320 F.R.D. at 316 (discussing how bare assertions of consent cannot defeat certification and citing cases).

Thus, as is often the case in TCPA claims, "there are no prickly individualized questions" that could predominate this action.  *Manno*, 289 F.R.D. at 690; *see also Brown,* 2019 U.S. Dist. LEXIS 54831, at *18-22 (stating, "The Court disagrees, however, that determining putative member's consent would require an individualized inquiry.").  "The facts necessary to establish liability relate to [Defendant's] common course of conduct and the transmissions of the [calls], and not to issues with individual class members." *Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 699 (finding predominance satisfied in TCPA case); *Mohamed*, 320 F.R.D. at 314 ("Plaintiff's claims are typical of the [] class because both involve alleged violations of the same federal statute and arise from the same pattern or practice of conduct allegedly engaged in by Defendant . . . .").

## 2.    A Class Action is Superior to Numerous, Individual TCPA Claims

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for fair[] and efficient[] adjudicati[on] of the controversy." Fed. R. Civ. P. 23(b)(3). The

superiority analysis focuses "not on the convenience or burden of a class action suit per se, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. "Consequently, the predominance analysis has a 'tremendous impact on the superiority analysis…for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Mohamed*, 320 F.R.D. at 316-317 (quoting *Klay*, 382 F.3d at 1269).

The relevant factors to guide the superiority determination include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). All of these factors weigh in favor of superiority.

Because of the modest individual damages in this case, Class members are unlikely to pursue any individual claims. Indeed, "[c]lass actions were designed for these types of claims." *G.M. Sign, Inc. v. Grp. C Commc'ns, In*c., No. 08-cv-4521, 2010 U.S. Dist. LEXIS 17843, at *16 (N.D. Ill. Feb. 25, 2010) ("Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."). Further, the "prosecution and adjudication of each of these individual claims, rather than disposition of the matter on a class-wide basis, would be judicially inefficient and a waste of this Court's resources." *Mohamed*, 320 F.R.D. at 317.

Finally, for the reasons detailed in the predominance section, this class action will not

present any manageability concerns. *See id.* ("Hence, due to the strong presumption that stems from this finding of predominance, we also conclude that a class action would be the superior method for litigating the modified class members' claims fairly and efficiently. Prosecuting the claims as a class is the superior option because the issues involved in Plaintiff's claim and the allegations he uses to support same would be, for all intents and purposes, identical to those raised in individual suits brought by any of the members of the modified class."). "For these reasons, the class action mechanism is superior to individual lawsuits that raise identical allegations to those contained in Plaintiff's [First] Amended Complaint." *Id.* The superiority requirement of Rule 23(b)(3) is satisfied.

## IV.     <u>CONCLUSION</u>

For the above reasons, Plaintiff respectfully requests that the Court certify the Class, appoint Plaintiff as Class representative, and appoint Shamis & Gentile, P.A., Edelsberg Law, P.A., IJH Law, Hiraldo P.A. and Eisenband Law, P.A. as Class counsel.

Dated: September 30, 2019

Respectfully submitted,

**IJH Law**

/s/ *Ignacio J. Hiraldo*
Ignacio J. Hiraldo, Esq.
Florida Bar No. 0056031
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537

**HIRALDO P.A.**

/s/ *Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954-400-4713
**Trial Counsel**

**EISENBAND LAW, P.A.**
Michael Eisenband
Florida Bar No. 94235

scott@edelsberglaw.com                    515 E. Las Olas Boulevard, Suite 120
19495 Biscayne Blvd #607                  Ft. Lauderdale, Florida 33301
Aventura, FL 33180                        MEisenband@Eisenbandlaw.com
Telephone: 305-975-3320                   Telephone: 954.533.4092

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
(t) (305) 479-2299

**Counsel for Plaintiff and the Class**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                                        */s/ Ignacio J. Hiraldo*
                                        Ignacio J. Hiraldo, Esq.
                                        Florida Bar No. 0056031