## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

### CASE NO. 6:19-cv-00196-GAP-DCI

CLIFTON PICTON,
individually and on behalf of all
others similarly situated,                                  **CLASS ACTION**

    Plaintiff,                                          **JURY TRIAL DEMANDED**

v.

GREENWAY CHRYSLER-JEEP-DODGE,
INC d/b/a GREENWAY DODGE
CHRYSLER JEEP,

      Defendant.
_____/


### PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR INCENTIVE AWARD AND ATTORNEYS' FEES, AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Clifton Picton sued Greenway Chrysler-Jeep-Dodge, Inc d/b/a Greenway Dodge Chrysler Jeep ("Defendant" or "Greenway"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that he was sent prerecorded messages using "ringless" voicemail technology. The parties negotiated a settlement on behalf of plaintiff and a class of approximately 10,357 consumers who received prerecorded messages from Defendant. On December 27, 2019, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now seek Final Approval of the Settlement, along with approval of an Incentive Award for the Class Representative and attorneys' fees for Class Counsel and reimbursement of certain expenses incurred in prosecuting this Action.

## I.      INTRODUCTION

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[1] Plaintiff contends that to gain an advantage over its competitors and increase its revenue, Defendant, an automotive dealership, initiated a prerecorded message campaign whereby prerecorded messages using "ringless" voicemail technology were sent to Plaintiff and approximately 55,000 other individuals. Plaintiff alleged that this prerecorded campaign violated the TCPA.

The parties participated in full-day mediation with Rodney Max, a well-respected mediator in Orlando, Florida. On that day, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation. The settlement required Defendant to make $2,745,000 available to the Settlement Class through a Settlement Fund which will be used to cover any Claim Settlement

---

[1] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

Payments. All Attorneys' Fees and Expenses, all Notice and Administration Costs, and any Incentive Award will be paid by Greenway separate and apart from the Settlement Fund *See* Settlement Agreement and Release ("Agreement" or "Settlement") attached as *Exhibit A*.[2]

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph 5 of the Agreement; (5) approve the Plaintiff's requested Incentive Award; (6) award Class Counsel attorneys' fees; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.     MOTION FOR FINAL APPROVAL

### A.     <u>Procedural History</u>

On January 31, 2019, Plaintiff filed a Class Action Complaint on behalf of himself and a putative class in the lawsuit styled *Picton v. Greenway Chrysler-Jeep-Dodge, Inc d/b/a Greenway Dodge Chrysler Jeep*, Case No. 6:19-cv-00196-GAP- DCI (M.D. Fla. 2019) (the "Action"), which asserted claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") against Defendant Greenway, including that he and members of the class received prerecorded messages using "ringless" voicemail technology from or on behalf of Greenway, which allegedly harmed him and the class (the "Allegations") and sought declaratory and injunctive relief, statutory damages, attorneys' fees, and costs. [DE #1].

On March 14, 2019, Defendant filed a Motion to Dismiss which argued that ringless voicemails are not covered by the TCPA and therefore the Action should be dismissed. [DE #17]. Plaintiff amended his Complaint on March 27, 2019 [DE #20] and Defendant again filed a Motion to Dismiss.

---

[2] All capitalized terms used herein have the same meanings as those defined in the Agreement.

[DE #22]. Plaintiff filed his Opposition to Defendant's Motion to Dismiss on April 19, 2019 [DE #23], and on June 21, 2019, this Court entered an Order granting Defendant's motion in part and denying it in part. [DE #26]. Plaintiff filed his Second Amended Class Action Complaint on July 5, 2019 (the " Complaint"). [DE #27]. The Complaint added Defendant's marketing company BDC Promotions, Inc. ("BDC") and the company hired to transmit the prerecorded messages, Voicelogic d/b/a Voicelogic.com ("Voicelogic") as Defendants. Voicelogic and Plaintiff filed a Joint Notice of Settlement on August 20, 2019 [DE #41] and BDC filed its Answer and Affirmative Defendants on September 4, 2019. [DE # 47].

On September 30, 2019, Plaintiff filed his Motion to Certify a Class. [DE # 50]. Defendant filed its Response on November 5, 2019 [DE # 55] and Plaintiff filed his Reply on November 13, 2019. [DE # 56].

Thereafter, on November 14, 2019, with the assistance of mediator Rodney Max of Upchurch Watson White & Max Mediation Group, counsel for the Parties met in Orlando, Florida and engaged in intensive mediation and arm's- length negotiations in an attempt to resolve Plaintiff's Allegations. As no agreement was immediately reached, the Parties, with continuing support from mediator Rodney Max, continued intensive arm's-length negotiations over several weeks with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice.

The Parties' ultimately reached an agreement in principle to resolve the Action. A Notice of Settlement was filed on December 2, 2019. [DE # 58].

### B.    Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

### 1.    The Settlement Class

The proposed Settlement establishes a Settlement Class which includes both a "Service Class" and a "Catch-All Class", both of which are defined as follows:

> "**Service Class**" means "All persons within the United States who (1) were successfully transmitted a prerecorded message; (2) promoting Defendant's goods and/or services; (3) on their mobile telephone; (4) on February 21st, 26th, and/or 28th 2018; (5) that was sent using the "ringless" voicemail platform hosted by Infolink Communications, Ltd., d/b/a Voicelogic; (6) after having provided their telephone number to Defendant for purposes of obtaining vehicle service from Defendant; (7) and have not purchased a vehicle from Defendant."
>
> "**Catch-All Class**" means "All persons within the United States who (1) were successfully transmitted a prerecorded message; (2) promoting Defendant's goods and/or services; (3) on their mobile telephone;(4) that was sent using the "ringless" voicemail platform hosted by Infolink Communications, Ltd., d/b/a Voicelogic."

Agreement Section I(GG). Excluded from the Settlement Class are: (1) Defendant; (2) its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest; (3) all customers who make timely election to be excluded; and (4) all judges assigned to this litigation and their immediate family members.

### 2.    Settlement Consideration

Pursuant to the Settlement, Defendant has agreed to make up to $2,745,000 available for the benefit of Settlement Class Members ("Settlement Fund"). The Settlement Fund includes One Million Four Hundred Twenty-Four Thousand and Four Hundred Dollars and Zero Cents ($1,424,400.00) for the Service Class and One Million Three Hundred Twenty Thousand and Six Hundred Dollars and Zero Cents ($1,320,600.00) for the Catch-All Class. Attorneys' Fees and Expenses, all Notice and Administration Costs, and any Incentive Award will be paid separate and apart from the Settlement Fund.

### 3.    The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Settlement Administrator will be responsible for administrating the Class Notice program. The Class Notice program consists of two different components: (1) Mailed Notice and (2) Long-Form Notice. Agreement at III.B. The forms of the proposed Mailed Notice and Long-Form Notice agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for an Incentive Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents.

### 4.    Incentive Award

Pursuant to the Settlement, Class Counsel is entitled to request, and Defendant agreed it would not oppose, an Incentive Award up to $5,000.00 for the Class Representative, Clifton Picton. Agreement at II.C. The Incentive Award will compensate Class Representative for his time and effort in the Action, including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement., and for the risks he undertook in prosecuting the Action against Defendant.

### 5.    Attorneys' Fees and Costs

Per the terms of the Settlement Agreement, Class Counsel was entitled to request, and Defendant agreed it would not oppose, attorneys' fees, litigation costs, and expenses of up to 23.67% of the Settlement Fund. Agreement at II.C. The Parties negotiated and reached agreement regarding

6

fees and costs only after agreeing on all other material terms of the Settlement. *See* Declaration of Michael Eisenband ¶ 3, attached as *Exhibit B* ("Eisenband Decl.").

      **C.**     <u>**Argument**</u>

      Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

      **1.**     **Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.**

      Defendant had contact information for the majority of the Settlement Class. Therefore, the Notice Program consisted of: (1) direct mail postcard notice ("Postcard Notice") for all Settlement Class members; (2) a "Long-Form" notice with more detail than the direct mail notices, which has been available on the Settlement Website and via mail upon request; and (3) a Settlement Website and Toll-Free Telephone Number. *See* Declaration of Lindsey Marquez ¶ 4, attached as *Exhibit C* ("Marquez Decl.").

      The Notice Administrator received data from Defendant that identified 55,366 unique

Settlement Class Member records. *Id.* at ¶ 7. The Notice Administrator then mailed 55,290 Postcard Notices to all potential Settlement Class Members via U.S. First Class Mail for whom an address was provided in the Class Data.  *Id.* at ¶ 9. The Notice Administrator also mailed 3 Claim Packages to potential Settlement Class Members on the Class List with a valid mailing address. *Id.* at ¶ 10. Prior to mailing the Administrator ran them through the National Change of Address Database. *Id.* at ¶ 11.

The Notice Administrator also established the Settlement Website, www.GreenwayTCPASettlement.com, which went live on February 11, 2020. *Id.* at ¶ 13. The Long Form Notice, along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement. *Id.* As of February 21, 2020, the Settlement Website had been visited by 60 unique visitors and 549 website pages have been presented.  *Id*. at ¶ 14.

In addition, a toll-free interactive Voice Response Unit ("VRU"), telephone number, was established. *Id*. at ¶ 15. By calling, Settlement Class members are able listen to answers to frequently asked questions and request a copy of the Claim Package. *Id*. As of February 21, 2020, the toll-free number has received 11 calls representing 45 total minutes. *Id*. at ¶ 16.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out, and

told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses of up to 23.67% of the Settlement Fund, and an Incentive Award for the Class Representative. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of February 21, 2020, the Settlement Administrator had received no requests for exclusions and ***no objections*** to the Settlement had been filed. Marquez Decl. ¶ 17 and 18. The opt-out and objection period ends on March 23, 2020.

## 2. The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig*., MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

>(1)      the existence of fraud or collusion behind the settlement;
>
>(2)      the complexity, expense, and likely duration of the litigation;
>
>(3)      the stage of the proceedings and the amount of discovery completed;
>
>(4)      the probability of the plaintiffs' success on the merits;
>
>(5)      the range of possible recovery; and
>
>(6)      the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a.      There Was No Fraud or Collusion.

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in formal mediation with Rodney Max. All negotiations were arm's-length and extensive. S*ee Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); Eisenband Decl. ¶ 4.

### b.      The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to a Settlement Class comprised of 8,097 Settlement Class Members. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c.      The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Eisenband Decl. ¶ 12. As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in extensive discovery with Defendant and third parties. *Id*. ¶ 13. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp.*

*of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

Plaintiff also spent considerable time researching and navigating Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis.

### d.   Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement.  *Domestic Air*, 148 F.R.D. at 314. Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendant, and the risks inherent in trial and post-judgment appeal. Eisenband Decl. ¶ 14. Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members, without further delay.

This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, the motion for class certification, motions for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment. *Id.* at ¶ 15. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Class Counsel believes that Plaintiff had a strong case against Defendant. *Id.* at ¶ 7.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

### e.   The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

The $2,745,000 settlement fund  in this case is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, the motion for class certification, motions for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment. Eisenband Decl. ¶ 15.

There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. Eisenband Decl. ¶ 16. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, LEXIS 806549,  at *7 (N.D. Ill. 2016) (TCPA case providing for a $52.50 payout for each claimant); *Arthur*

*v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) (approving TCPA settlement where each class claimant estimated to receive between $20 and $40).

### f.   The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. Eisenband Decl. ¶ 11. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement, as not a single objection was filed to date. Eisenband Decl. ¶ 17. This is another indication that the Settlement Class is clearly satisfied with the Settlement.  Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co*., 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3.   The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests

14

of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 10,357 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's prerecorded messaging program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because she received prerecorded messages and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to

the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## III.    APPLICATION FOR INCENTIVE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose,

an Incentive Award for the Class Representative in the amount of $5,000.00. Incentive awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Incentive Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement. Eisenband Decl. ¶ 18. Plaintiff was also available for trial and deposition, if necessary. *Id.* at ¶ 19.

The Incentive Award of $5,000.00 is less than 0.0018% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *Id.* at ¶ 20. The Incentive Award requested here is reasonable.

## IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees equal to 23.67% of the Settlement Fund. Eisenband Decl. ¶ 21. Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id.* at ¶ 3. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein,

Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

     **A.**    <u>**The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.**</u>

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common- fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for

the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

>(1)     the time and labor required;
>(2)     the novelty and difficulty of the relevant questions;
>(3)     the skill required to properly carry out the legal services;
>(4)     the preclusion of other employment by the attorney as a result of his acceptance of the case;
>(5)     the customary fee;
>(6)     whether the fee is fixed or contingent;
>(7)     time limitations imposed by the clients or the circumstances;
>(8)     the results obtained, including the amount recovered for the Clients;
>(9)     the experience, reputation, and ability of the attorneys;
>(10)    the "undesirability" of the case;
>(11)    the nature and the length of the professional relationship with the clients; and
>(12)    fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time

required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1.    The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Eisenband Decl. ¶ 22. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id.* at ¶ 23. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* at ¶ 24. Time and resources were also dedicated to conducting formal discovery, which included review of numerous pages of documents and electronic data, and discovery. *Id.* at ¶ 25.

Settlement negotiations consumed further time and resources. *Id.* at ¶ 26. The initial mediation session required substantial preparation and document review. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. All of this work consumed a substantial amount of time.

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* at ¶ 27. The time and resources devoted to this Action readily justify the requested fee.

### 2.    The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills

and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Our work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification issues. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Eisenband Decl. ¶ 28.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendant was represented by extremely capable counsel. They were worthy, highly competent adversaries. Eisenband Decl. ¶ 29; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3. Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check and the amount shall be $200 per call for the "Service Class" and $25 per claim for the "Catch-All Class". Agreement at I.J.

### 4. The Claims Presented Serious Risk.

The Settlement is particularly noteworthy given the combined litigation risks. Eisenband Decl. ¶ 31. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be

21

rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp*., 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset. Eisenband Decl. ¶ 32. The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent Settlement. Eisenband Decl. ¶ 33.

### 5. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Eisenband Decl. ¶ 34. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and

capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Eisenband Decl. ¶ 35. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced. *Id.* at ¶ 36. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### 6.    The Requested Fee Comports with Fees Awarded in Similar Cases.

Counsel's requested fee of 23.67% of the Settlement Fund is well within the range of fees typically awarded in similar cases. *Id.* at ¶ 37. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 23.67% fee is well within the range of reason under the factors listed by the *Camden I. See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03- 22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly

proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Consequently, the attorneys' fee requested here, which is within the range of the cases cited about, is appropriate and should be awarded.

## V.     CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as *Exhibit D*; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Clifton Picton as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in section K of the Agreement; (5) approve the requested Incentive Award in the amount of $5,000.00; (6) award Class Counsel attorneys' fees in the amount of 23.67% of the Settlement Fund; and (7) enter Final Judgment dismissing the Action with prejudice. Counsel for Defendant has no opposition to this motion.


Dated: February 24, 2020

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, Florida 33132
Telephone: 305-479-2299

**EISENBAND LAW, P.A.**
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
Email: mhiraldo@hiraldolaw.com
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Scott@Edelsberglaw.com
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
14 NE First Ave. 10th Floor
Miami, FL 33132
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709